(173 App. Div. 847)

## McCREADY v. LARKIN et al.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. SALES ⊙═339—BREACH BY BUYER—RESALE—ACTION FOR DAMAGES—DEFENSE.
   In an action by the seller of a mortgage for the difference between the selling price and the amount received on resale on the purchaser's breach, that plaintiff owned the mortgage as trustee and had never tendered a transfer as such was not a defense, where defendant did not allege a tender of performance nor a demand upon plaintiff.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 924, 926; Dec. Dig. ⊙═339.]

2. SALES ⊙═339—BREACH—RESALE—ACTION FOR DAMAGES—DEFENSE.
   That before a part payment was due plaintiff repudiated his contract obligation to extend the mortgage's maturity by letters, set out in full, and thereby excused and waived a tender of performance by defendant, was a sufficient defense.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 924, 926; Dec. Dig. ⊙═339.]

3. SALES ⊙═378—BREACH—RESALE—SELLER'S ACTION FOR DAMAGES—DEFENSE.
   A defense that plaintiff failed to perform his contract obligation to extend the mortgage's maturity is insufficient, where there is no allegation of defendant's readiness to perform, nor of any demand upon, or tender to, plaintiff.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1093; Dec. Dig. ⊙═378.]

4. SALES ⊙═339—BREACH—RESALE—ACTION FOR DAMAGES—DEFENSE.
   Where a seller sued for the difference between the contract sales price of a mortgage and what he later sold it for, an answer that the price ob-

tained was unduly low because plaintiff failed to announce the particulars as to its maturity, constituted only a partial defense.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 924, 926; Dec. Dig. &#10149;339.]

5. SALES &#10149;339—BREACH—RESALE—ACTION FOR DAMAGES—DEFENSE.

A defense that plaintiff bid in the mortgage himself, using a dummy purchaser to conceal the real transaction, is sufficient, for, if true, the plaintiff suffered no damage.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 924, 926; Dec. Dig. &#10149;339.]

6. SALES &#10149;378—RESALE—BREACH OF CONTRACT—COUNTERCLAIM BY BUYER.

A counterclaim alleging facts showing plaintiff's repudiation of the contract and defendant's election to accept, and demanding the return of a payment made to plaintiff under the contract, is sufficient.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1093; Dec. Dig. &#10149;378.]

Appeal from Special Term, New York County.

Action by Nathaniel L. McCready against John A. Larkin and others. From an interlocutory judgment sustaining a demurrer to certain defenses and to a counterclaim, defendant John A. Larkin appeals. Modified and affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

Joseph M. Gazzam, of New York City, for appellant.

Robert Kelly Prentice, of New York City, for respondent.

DOWLING, J. The complaint herein sets forth the making on June 12, 1914, of an agreement in writing between plaintiff and John A. Larkin (the appellant), Thomas A. Larkin, and Edward L. Larkin, whereby the Larkins bound themselves to purchase from plaintiff a second mortgage for $50,000 on premises 141–147 Fifth avenue, borough of Manhattan, city of New York, and to pay therefor the sum of $40,000 as follows: $2,500 on the acceptance of their offer (receipt of which was acknowledged in plaintiff's written acceptance of the offer), $17,500 on June 15, 1914, and $20,000 on the same date by delivering eight promissory notes, for $2,500 each (payable in 3, 4, 5, 6, 7, 8, 9, and 10 months, respectively from that day) each to be made by Thomas A. Larkin and indorsed by Edward L. Larkin and John A. Larkin. The agreement, a copy of which is attached to the complaint, contains the clause:

"And we request in consideration of this agreement that you will extend the time for payment of the principal of said mortgage to December 31, 1914."

It is alleged in the complaint:

That at the time of executing the agreement, "at the request of the defendants, plaintiff agreed to extend the time for payment of the principal of said mortgage to December 31, 1914; that at the time fixed for paying the balance of the purchase price under the agreement plaintiff was able, willing, and ready to perform his part thereof (and ever since has been), but defendants notified plaintiff that they would not perform and have failed to make any further payment, although it was duly demanded; that plaintiff on June 18, 1914, notified defendants that, if they did not complete their

contract for the purchase of said mortgage, plaintiff would proceed to sell the same for their account and hold them for any deficiency which might arise on said sale."

It is further alleged that the mortgage and its accompanying bond were offered at private sale, but no reasonable offer therefor could be obtained, so that on July 29, 1914, after notice to defendants and advertisement in three daily newspapers, the bond and mortgage were sold at public auction to Charles F. De Casanova for $5,500, being the highest price bid therefor, and at an expense of $74.70, leaving $5,-425.30 to be credited on the purchase price, and the sum of $32,074.70 due from the defendants; that by reason of the facts aforesaid this plaintiff has been damaged in the sum of $32,074.70, no part of which has been paid, for which amount, with interest, judgment is demanded. To this complaint the second amended answer of the defendant John A. Larkin, besides his main defense, set up eight separate defenses and a counterclaim for $2,500. A demurrer to the original answer having been sustained, the amended answer was served in an effort to obviate the defects found to exist in the former pleading.

[1] As to the first defense, the demurrer thereto was originally sustained upon the ground that while it was alleged therein that the mortgage in question belonged to Nathaniel L. McCready and Caroline A. McCready as trustees, and not to plaintiff personally; and that plaintiff never tendered any transfer by the trustees, it was not alleged that defendant had ever tendered performance on his part or made any demand upon plaintiff to perform, with which plaintiff refused to comply. This leaves the first defense insufficient, and the demurrer to it was properly sustained. The second defense is insufficient because the agreement sued on is in writing, between the parties to this suit, and all those interested in the agreement are before the court, and their rights and duties must be tested by the contract which they made. The demurrer to the second defense was properly sustained. The third defense is insufficient, for the same reason as the first, and the demurrer to it was properly sustained.

[2] The fourth defense is that, prior to the time of making the agreement in question, defendants were negotiating with the Chelsea Exchange Bank of New York City for a loan to the 406 West Thirty-First Street Company, Incorporated (the owner of the premises covered by the mortgage), to be secured by an assignment of the rents of said premises; that the bank was unwilling to make the loan unless the time for payment of the principal of the $50,000 mortgage was extended to December 31, 1914, and the inclusion of the extension clause in the agreement in suit was because of the insistence of the bank thereon as a condition to making the loan, which plaintiff well knew, and knew as well that the extension was essential to defendant's interests. It is further alleged that plaintiff caused a letter to be sent to the bank and the Thirty-First Street Company on June 12, 1914, advising them of the extension of the $50,000 mortgage to December 31, 1914, on production of receipts for first mortgage interest due June 1, 1914, and taxes, within 10 days from that date; that the bank made the loan relying on this letter; that, as plaintiff

knew, defendants were negotiating with the bank for another loan to enable them to make the cash payment of $17,500 to plaintiff on June 15, 1914, as provided by the agreement, but that defendants could not make the payment without such loan, as plaintiff well knew; and that the bank was willing to make such loan, and was only prevented from so doing by plaintiff's action as thereinafter complained of.

There is then set forth the existence upon the property in question of a first mortgage of $600,000, and a second mortgage of $300,000, the $50,000 mortgage in question being subordinate to both; that the $300,000 mortgage had never been satisfied of record, although plaintiff claimed it was satisfied in fact and that he had an instrument in his possession sufficient to discharge the same of record, thus making the $50,000 mortgage a second instead of a third lien; that when the time came to close the agreement plaintiff had not procured the satisfaction of record of the $300,000 mortgage because the register refused to accept the instrument purporting to satisfy the mortgage, unless it was executed by another party which had held an assignment thereof as collateral security; that plaintiff failed to comply with the requirements of the register until after the time fixed for carrying out the agreement; that the defendants advised plaintiff that the $300,000 mortgage was still unsatisfied of record, and at his request consented to postpone the time for the final payment under the agreement "for a reasonable length of time, which was not definitely fixed," in order to enable plaintiff to obtain a proper discharge of record of the mortgage, which plaintiff finally succeeded in doing, "but did not thereupon, within a reasonable time thereafter, inform the defendants that he had done so, or that he was ready, willing, and able to carry out the terms and conditions of said instrument, Exhibit A, and did not request the defendants to fix any time for the carrying out thereof, and did not give the defendants any reasonable opportunity to fix such time, or to carry out such terms and conditions, or to make any tender or offer to carry out said terms, nor did plaintiff make such tender or offer," but made no communication to defendants thereafter till he notified them he would not carry out the terms and conditions of the agreement on his part to be performed, and falsely and wrongfully accused the defendants of misrepresenting facts and of being in default.

Then two letters are set forth at length, which are alleged to have been sent without performance, or tender of performance, on plaintiff's part, and without giving defendants any opportunity to perform or tender performance. The first is dated June 18, 1914, and is directed to defendants, advising them that his original letter extending the time of payment of the $50,000 mortgage had been procured "by representations which have not been made good, and he does not propose to be bound by it, and in view of your unexplained default on your agreement of the same date he proposes to take immediate steps to sell the mortgage referred to and to hold you for any deficiency on sale." The second letter is dated June 19, 1914, the conditions as to tender or performance still being the same, and is directed to the West Thirty-First Street Company and the bank, advising them that

because of misrepresentations of fact made to procure his consent to the extension of the $50,000 mortgage plaintiff withdrew his letter extending the mortgage, and "did not propose, at present, to extend that mortgage, and shall insist upon having the engagements of the parties interested no longer delayed, but performed." Thereby it is alleged "the plaintiff did repudiate and refuse to carry out his said agreement to extend the time for the payment of the principal of said $50,000 mortgage to the 31st day of December, 1914"; that the said repudiation was without cause or excuse, it being untrue that any misrepresentations of fact had been made to procure the extension or that defendants were in default. Further it was averred that plaintiff never made a binding extension of the time of payment of the mortgage, and subsequently withdrew and canceled his letter agreeing to an extension; that the bank refused to make its loan because of plaintiff's repudiation of his agreement and his false representations as to defendants.

The answer proceeds to set forth that the various acts of plaintiff constituted a wrongful repudiation by him of a material condition of his agreement to be by him performed, whereupon defendant was entitled to, and did, treat the same as a complete renunciation by plaintiff of the instrument, which was abrogated, abandoned, and renounced, and all the obligations of the parties ceased, except plaintiff's obligation to return to defendants the payment of $2,500; that defendants informed plaintiff they would not complete the performance of the contract because of plaintiff's acts, and that "the acts of the plaintiff set forth in this defense constituted a waiver by the plaintiff of any and all tender and offer of performance by defendants of the terms and conditions of said instrument, Exhibit A." The demurrer to this defense in its original form was sustained, upon the ground that the text of the communications was not disclosed, nor to whom sent, nor was there any allegation that defendants were ready and able to perform. These objections have all been met by appropriate averments in the amended answer, the letters being set forth in full, and the facts given justifying the charge that plaintiff himself breached the contract, and that his acts waived and excused any tender or offer of performance by defendants. The demurrer to the fourth defense must therefore be overruled.

[3] The fifth defense contains an averment that plaintiff failed to perform a material condition precedent to any liability on the part of defendant, in that it failed to extend the mortgage; but it had no appropriate allegation of defendant's readiness, ability, or willingness to perform, nor any demand upon, or tender to, plaintiff. The demurrer thereto was therefore properly sustained. The sixth defense is insufficient in itself, and is only a statement in a different and incomplete form of a part of the fourth defense. The demurrer thereto was properly sustained. The seventh defense was not demurred to.

[4, 5] The eighth defense challenges the good faith of the sale at public auction of the $50,000 mortgage, and alleges that it was not a fair and bona fide sale, but made to a dummy, the De Casanova mentioned in the complaint, whom plaintiff caused to pretend to bid the mortgage in, with the intention of having De Casanova ostensibly, but

not actually, acquire it at such sale at an inadequate price, and "to hold said mortgage for and transfer it the same to the vendor or vendors at the sale, with the intention of creating a fictitious and colorable basis for a claim for damages against the defendants; that the sale was conducted in such a manner as to discourage bona fide purchasers, because of certain announcements by the plaintiff, at and prior to the sale, that same was sold subject to a claim that the time for payment of the mortgage had been extended, without giving any details of such claim, thus creating uncertainty as to the terms of the mortgage and materially reducing the value thereof in the estimation of prospective purchasers." While the second part of this defense was only a partial one, the first part went directly to the cause of action, which is based entirely on the damages sustained by reason of the difference between the amount agreed to be paid for the mortgage and the net amount realized upon the sale at public auction. If that sale was only a "wash" transaction, and the plaintiff really bid in the mortgage himself and retained its ownership, using the bidder merely as his convenience to cover the real transaction, by which he regained possession of the mortgage, then he sustained no actual damage whatever, and the defense would be a good one, if established. The demurrer to the eighth defense should therefore be overruled.

[6] The counterclaim repeats and realleges various paragraphs of the answer, including those constituting the fourth and eighth defenses. It then sets forth the payment of $2,500 by defendants to plaintiff under the agreement; that by reason of the facts set forth in those defenses (with others) the sole considerations for that payment were null and void; that plaintiff has failed to perform and has repudiated his obligations under the agreement; that defendants have therefore elected to accept the repudiation, and all obligations of the parties thereunder have ceased, save that of the plaintiff to repay the sum of $2,500 to defendants, which the latter have demanded from plaintiff, who has refused to pay it; that Thomas A. Larkin and Edward L. Larkin have assigned all their rights to the repayment of said sum to plaintiff; and that "this counterclaim arose out of the transaction set forth in the complaint, and is connected with the subject of this action, and is a cause of action on contract, which accrued in favor of all of the defendants prior to the commencement of this action." The demurrer to the counterclaim in the original answer was sustained because none of the defenses incorporated therein by reaverment was found to be sufficient in law. As two of the defenses therein included and repeated are sufficient in law for the reasons hereinbefore stated (being the fourth and eighth), it follows that the demurrer to the counterclaim should be overruled.

The judgment appealed from should therefore be modified, by decreeing that the fourth and eighth defenses and the counterclaim contained in the second amended answer of defendant John A. Larkin are sufficient in law upon the face thereof, and by overruling the demurrers thereto, and in other respects affirmed. The conclusions of law in the decision will also be modified accordingly. Judgment, as modified, is affirmed, with costs to appellant, with leave to plaintiff to reply to said counterclaim. All concur.